UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OMAR VALDIVIA,

            Petitioner,

    v.

S. FRAUENHEIM, Warden,

            Respondent.

No. 2:14-CV-2097 TLN DB P

FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding without counsel with an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. On April 4, 2012, petitioner was convicted of committing numerous sex offenses against two minors. He seeks federal habeas relief on the following grounds: (1) the trial court violated his right to present a defense by excluding evidence that one of the complaining witnesses had made a false accusation of sexual misconduct against another person; (2) the trial court violated his right to present a defense by allowing a witness to invoke her Fifth Amendment right against self-incrimination outside the presence of the jury; (3) the prosecutor committed misconduct in closing argument by telling the jury that it must return a verdict no matter how long it took; (4) the prosecutor committed misconduct during closing argument by shifting the burden of proof and improperly vouching for his witnesses; and (5) his trial and appellate counsel rendered ineffective assistance.

1

Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I.  Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> **BACKGROUND**
>
> In 2002, defendant moved in with his girlfriend and her two daughters.  The older daughter testified that, when she was age 10, defendant began touching her inappropriately while her mother was at work.  In subsequent years (when she was ages 11 through 13), defendant frequently touched her in sexual ways and often orally copulated her.  The victim did not tell her mother because defendant threatened to do something bad to her mother and sister if she told anyone.
>
> Defendant tried to rape the older daughter when she was 13.  When she was 14, he forcibly raped her, locking her into a bedroom and putting a sock in her mouth.  He forced her to have intercourse with him at least five more times.
>
> The older daughter was afraid of defendant.  She moved into the home of her boyfriend when she was age 14.  After she moved out of her mother's home, defendant began sexual [sic] abusing her younger sister, who was age 10 at the time.  The younger daughter did not tell anyone because defendant hit her and threatened her, and she had seen defendant hit her mother.
>
> A maternal uncle's query at a family gathering near the end of 2009 ultimately brought the crimes to light.  Defendant was arrested a few months later.  He said he began living with a cousin after the family called the authorities.
>
> Defendant claimed both victims lied to further a scheme concocted by their maternal grandmother.  He said the older daughter had made a false accusation of inappropriate sexual conduct against his cousin's husband, Jesus Solis, during a family party.  Before trial, however, the prosecutor moved to exclude evidence of the alleged false accusation, among other things.  At a hearing conducted pursuant to Evidence Code section 402, several witnesses testified.  After hearing the testimony and the argument of counsel, the trial court concluded that the evidence was weak, that there was insufficient evidence of a false accusation, and that allowing evidence on the issue would result in a "sub-trial" on the matter.  The trial court excluded the evidence pursuant to Evidence Code section 352, ruling that the probative value of the evidence was not outweighed by undue prejudice or undue consumption of time, and the evidence would confuse the issues and mislead the jury.

The jury found defendant guilty of the following offenses: lewd and lascivious act by force, violence, duress, menace or threat of great bodily harm against the older daughter when she was between the ages of nine and 10 (Pen. Code, § 288, subd. (b)(1) - count one); lewd and lascivious act by force, violence, duress, menace or threat of great bodily harm against the older daughter when she was age 11 (Pen. Code, § 288, subd. (b)(1) - count two); oral copulation against the older daughter when she was age 12 (Pen. Code, §§ 269, subd. (a)(4), 288a, subd. (c)(2) - count three); oral copulation against the older daughter when she was age 13 (Pen. Code, §§ 269, subd. (a)(4), 288a, subd. (c)(2) - count four); rape against the older daughter when she was age 13 (Pen. Code, §§ 261, subd. (a)(2), 269, subd. (a)(1) - count five); rape against the older daughter when she was age 14, using force, violence, duress, menace, or fear of immediate unlawful bodily injury (Pen. Code, § 261, subd. (a)(2) - count six); rape against the older daughter when she was age 14, on a different date than count six, using force, violence, duress, menace, or fear of immediate unlawful bodily injury (Pen. Code, § 261, subd. (a)(2) - count seven); lewd and lascivious act against the younger daughter [his hand on her breast] (Pen. Code, § 288, subd. (b)(1) - count eight); lewd and lascivious act against the younger daughter [his mouth on her breast] (Pen. Code, § 288, subd. (b)(1) - count nine); and digital penetration of the vagina of the younger daughter (Pen. Code, §§ 269, subd. (a)(5) - count ten).  The jury also found true a special allegation that the offenses involved more than one victim.

The trial court sentenced defendant to 10 consecutive terms of 15 years to life in prison.  It imposed various fines and fees, including a $600 fine pursuant to Penal Code section 243.4, and a $270.17 main jail booking fee and a $51.34 main jail classification fee pursuant to Government Code section 29550.2.  In addition, the trial court ordered that defendant "not have visitation privileges with the victim" pursuant to Penal Code section 1202.05.

People v. Valdivia, No. C071353, 2014 WL 1465115, at *1–2 (Cal. Ct. App. Apr. 15, 2014), review denied, June 25, 2014.

## II.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

////

////

3

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, ___ U.S. ___, ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

4

1   writ if the state court identifies the correct governing legal principle from the Supreme Court's

2   decisions, but unreasonably applies that principle to the facts of the prisoner's case.   Lockyer v.

3   Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

4   (9th Cir. 2004).  A federal habeas court "may not issue the writ simply because that court

5   concludes in its independent judgment that the relevant state-court decision applied clearly

6   established federal law erroneously or incorrectly.  Rather, that application must also be

7   unreasonable." Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

8   (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

9   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

10  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

11  'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

12  Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

13  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

14  must show that the state court's ruling on the claim being presented in federal court was so

15  lacking in justification that there was an error well understood and comprehended in existing law

16  beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

17      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

18  court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

19  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

20  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

21  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

22  de novo the constitutional issues raised.").

23      The court looks to the last reasoned state court decision as the basis for the state court

24  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

25  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

26  previous state court decision, this court may consider both decisions to ascertain the reasoning of

27  the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

28  federal claim has been presented to a state court and the state court has denied relief, it may be

1    presumed that the state court adjudicated the claim on the merits in the absence of any indication

2    or state-law procedural principles to the contrary." Richter, 562 U.S. at 99.  This presumption

3    may be overcome by a showing "there is reason to think some other explanation for the state

4    court's decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

5    (1991)).

6           Where the state court reaches a decision on the merits but provides no reasoning to

7    support its conclusion, a federal habeas court independently reviews the record to determine

8    whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

9    Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

10   review of the constitutional issue, but rather, the only method by which we can determine whether

11   a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

12   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

13   reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

14          A summary denial is presumed to be a denial on the merits of the petitioner's claims.

15   Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

16   just what the state court did when it issued a summary denial, the federal court must review the

17   state court record to determine whether there was any "reasonable basis for the state court to deny

18   relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could

19   have supported, the state court's decision; and then it must ask whether it is possible fairminded

20   jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

21   decision of [the Supreme] Court."  562 U.S. at 102.  The petitioner bears "the burden to

22   demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v.

23   Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

24          When it is clear, however, that a state court has not reached the merits of a petitioner's

25   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

26   habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

27   F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

28   ////

1 **III.  Petitioner's Claims**

2        **A.  Erroneous Exclusion of Evidence**

3       In petitioner's first ground for relief, he claims that the trial court violated his right to

4 present a defense when it excluded evidence that Mayra, the elder victim, had previously made a

5 false accusation of inappropriate sexual conduct against Jesus Solis.  (ECF No. 22-1 at 20.)[1]

6       Petitioner raised this claim on direct appeal.  (Resp't's Lod. Doc. 1 at 11, 17.)  The

7 California Court of Appeal denied the claim on state law grounds and did not specifically address

8 petitioner's federal due process claim.  Under these circumstances, this court must presume,

9 subject to rebuttal, that the federal claim was adjudicated on the merits.  <u>Johnson v. Williams</u>, ___

10 U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013) (when a state court decision rejects some of

11 petitioner's claims but does not expressly address a federal claim, a federal habeas court must

12 presume, subject to rebuttal, that the federal claim was adjudicated on the merits).  Because the

13 presumption has not been rebutted in this case, this court will assume that petitioner's federal due

14 process claim was addressed on the merits by the California Court of Appeal.

15       After the California Court of Appeal issued its decision, petitioner filed a petition for

16 review.  (Resp't's Lod. Doc. 5.)  That petitioner was summarily denied.  (Resp't's Lod. Doc. 6.)

17 Accordingly, this court will analyze the Court of Appeal's decision as the relevant state-court

18 determination.  <u>Taylor v. Maddox</u>, 366 F.3d 992, 999 n.5 (9th Cir. 2004) ("We analyze the court

19 of appeal's decision as the relevant state-court determination because the state supreme court

20 denied Taylor's petition for review without citation or comment.").

21       **1.  State Court Decision**

22       The California Court of Appeal denied petitioner's due process claim, reasoning as

23 follows:

24           Defendant contends the trial court erred in refusing to admit
evidence that the older daughter had made a prior false accusation

25           of sexual misconduct against Jesus Solis.  Defendant claims there

26           was a "strong similarity" in the accusations because, in both

27 _____
[1]  Page number citations such as this one are to the page numbers reflected on the court's
CM/ECF system and not to page numbers assigned by the parties.

28

instances, the older daughter "presented herself as the subject of unwanted sexual attention and touching by an adult male."

Evidence about the character of a witness is generally admissible for impeachment of a witness's credibility, subject to the discretion of a trial court to exclude evidence that is more prejudicial than probative.  (People v. Wall (1979) 95 Cal.App.3d 978, 987.)  When the witness is testifying against a defendant in a criminal trial for forcible rape, collateral evidence of her nonsexual conduct may be admissible to disprove the truthfulness of her testimony.  (Id. at p. 989; but see People v. Jones (1984) 155 Cal.App.3d 153, 183 [criticizing Wall and emphasizing that, under Evidence Code section 786, only specific instances of untruthfulness are admissible against a rape victim].)

A prior false accusation of sexual molestation is admissible to challenge a victim's credibility, but only if it is first established that the prior accusation was false.  (People v. Tidwell (2008) 163 Cal.App.4th 1447, 1457.)  When earlier complaints "'never reached the point of formal charges'" and there is no conclusive evidence of falsity, a trial court may properly exclude the evidence under Evidence Code section 352.  (People v. Tidwell, supra, 163 Cal.App.4th at p. 1458.)   Admitting or excluding evidence under Evidence Code section 352 is a matter of discretion and we must uphold the exercise of that discretion unless the trial court acted in an "arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."  (People v. Rodriguez (1999) 20 Cal.4th 1, 9–10.)

Here, in response to a motion in limine, the trial court held a hearing under Evidence Code section 402 to determine whether to admit evidence about the accusation against Solis.   During the course of several days, the trial court heard testimony from several witnesses and repeatedly remarked that defendant's offer of proof was still missing the key element of a demonstrably false statement. Solis said he approached the older daughter at a party when she had her head down and appeared to be upset.  He did not remember whether he touched her, but said she looked surprised and pulled away; he acknowledged that she had never given him an indication she wanted to talk to him or be touched by him.

Solis's wife (defendant's cousin) said she saw from a distance that the older daughter pulled away from her husband's touch but denied that she earlier told investigators her husband had his arm around the older daughter's shoulder when the older daughter pulled away. Solis's wife insisted the older daughter was a liar and claimed Solis never once left her sight during the entire seven hours of the party, but she also said she considered divorcing Solis over it before eventually deciding that the accusation was "all a lie."

Solis's sister-in-law testified that the older daughter called her the morning after the party to say Solis tried to kiss her.  The sister-in-law was not at the party, but she concluded the older daughter had lied about Solis trying to kiss her because the sister-in-law's mother

told her the older daughter was not telling the truth.  The sister-in-law's mother had not been at the party either.

The trial court observed that Solis and his wife both testified that the older daughter pulled away from Solis's touch at the party, demonstrating by her body language that she did not welcome contact with him.  The trial court noted that it was possible to conclude from the offer of proof that the victim pulled away because she believed Solis tried to kiss her even if that had not been his intent and, in any event, there was little similarity between that and her accusation years later that defendant forcibly raped her.  Solis and his wife could not describe the accusation with specificity, and law enforcement was never involved with the Solis incident, so there were no sworn statements. The trial court concluded there was insufficient evidence to prove a false complaint.  Without proof of a false complaint, the testimony about Solis was not relevant to the issue of the older daughter's credibility.  The trial court also said that allowing evidence on the issue would result in a "sub-trial" on the matter.  The trial court excluded the evidence pursuant to Evidence Code section 352, ruling that the probative value of the evidence was not outweighed by undue prejudice or undue consumption of time, and the evidence would confuse the issues and mislead the jury.

The trial court considered the correct factors, and the trial court's conclusions were based on the evidence presented.  Moreover, when defense counsel insisted after the ruling that falsity could be established if one more witness could be heard, the trial court agreed to hear from the older daughter's mother.  The mother said defendant told her Solis tried to hug and kiss the older daughter at the party; in addition, the older daughter told her mother she did not like the way Solis touched her.  When the mother confronted Solis about it, the mother said Solis apologized and explained that he had been drinking.  The mother knew that defendant's family did not believe the older daughter's accusation, but the older daughter never changed her story.  The trial court found no reason to change its decision to exclude the evidence.

The trial court did not err in concluding there was insufficient evidence that the accusation was false.  And it did not abuse its discretion in ruling that admission of the evidence would have required a sub-trial on the issue of falsity that would have involved an undue consumption of time.

The cases cited by defendant are inapposite.  (See, e.g.,People v. Adams (1988) 198 Cal.App.3d 10 [categorically excluding all evidence of rape victim's conduct, including evidence that she had falsely accused other men of rape was error]; People v. Burrell–Hart (1987) 192 Cal.App.3d 593 [finding harmless error when evidence of a recent and very similar false accusation of rape was excluded and two witnesses of the earlier incident were already testifying]; Franklin v. Henry (9th Cir.1997) 122 F.3d 1270 [discussing constitutional errors in habeas corpus context].)

Defendant's contention lacks merit.

1  Valdivia, 2014 WL 1465115, at *3–4.

2  **2. Description of Claim**

3  Petitioner argues that the decision of the California Court of Appeal on this claim is

4  "contrary to" clearly established United States Supreme Court precedent because it "applied a

5  rule that contradicts the governing law set forth in Supreme Court cases." (ECF No. 22-1 at 20.)

6  Petitioner points to the following language in the state court's decision:

7  
8  > Admitting or excluding evidence under Evidence Code section 352 is a matter of discretion and we must uphold the exercise of that discretion unless the trial court acted in an "arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."

9  

10  Petitioner notes that California law has defined "manifest miscarriage of justice" as follows:

11  
12  > [A] 'fundamental miscarriage of justice' will have occurred in any proceeding in which it can be demonstrated: (1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which the petitioner was convicted; (3) that the death penalty was imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the trial error or omission no reasonable judge or jury would have imposed a sentence of death; (4) that the petitioner was convicted or sentenced under an invalid statute.

13  
14  
15  
16  

17  In re Martinez, 46 Cal.4th 945, 956–57 (2009) (quoting In re Clark, 5 Cal.4th 750, 797-98

18  (1993)). Petitioner argues that, given this language in Martinez, the above-quoted portion of the

19  state court's decision imposed on him the burden of establishing that the trial court's evidentiary

20  error was "so fundamentally unfair that absent the error no reasonable judge or jury would have

21  convicted the petitioner; or that he was actually innocent of the crime or crimes of which he was

22  convicted." (ECF No. 22-1 at 28.) He contends this "is not the correct standard when

23  considering a claim that a defendant was denied his Sixth and Fourteenth Amendment right to

24  present a defense." (Id. at 22.) As an example of the correct standard, petitioner cites Chambers

25  v. Mississippi, 410 U.S. 284, 302 (1973) and California v. Trombetta, 467 U.S. 479, 485 (1984).

26  In Chambers, the United States Supreme Court held that the petitioner's right under the

27  Due Process Clause to a fair trial was violated when the trial court denied him the right to call

28  crucial witnesses in support of his defense of actual innocence in the killing of another man. Id.

at 290.  The court described its holding as follows:

> We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process.  In reaching this judgment, we establish no new principles of constitutional law.  Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures.  Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.

Id. at 302.  As recently summarized by the Ninth Circuit, "[i]n Chambers, the Supreme Court held that a state court may not prohibit a defendant from presenting directly exculpatory evidence when the evidence is essential to the defendant's case and bears sufficient indicia of reliability."  Ayala v. Chappell, 829 F.3d 1081, 1113 (9th Cir. 2016).

In Trombetta, the Supreme Court explained:

> Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense.  To safeguard that right, the Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence."  United States v. Valenzuela–Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3447, 73 L.Ed.2d 1193 (1982).  Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system.

Id. at 485.  Using these principles, the court in Trombetta concluded that "the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce the results of breath-analysis tests at trial."  Id. at 491.

Petitioner also argues that the California Court of Appeal's harmless error analysis was "contrary to" the decision in Brecht v. Abrahamson, 507 U.S. 619 (1993).  In Brecht, the Supreme Court held that on collateral review of a state court criminal judgment under 28 U.S.C. § 2254, an error is harmless unless it had "a substantial and injurious effect or influence in determining the jury's verdict."  Id. at 631.

////

11

### 3. Applicable Legal Principles

"The Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense' and the right to present relevant evidence in support thereof. <u>Nevada v. Jackson</u>, ___U.S.___, ___, 133 S. Ct. 1990, 1992 (2013) (quoting <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986)). <u>See</u> also <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324 (2006). This right is not unlimited, but rather is subject to reasonable restrictions. <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998); <u>Alcala v. Woodford</u>, 334 F.3d 862, 877 (9th Cir. 2003). The Constitution permits judges to exclude evidence "if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." <u>Holmes</u>, 547 U.S. at 319. "Even relevant and reliable evidence can be excluded when the state interest is strong." <u>Perry v. Rushen</u>, 713 F.2d 1447, 1450 (9th Cir. 1983).

A state law justification for exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." <u>Scheffer</u>, 523 U.S. at 308. <u>See also</u> <u>Crane</u>, 476 U.S. at 689-91 (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"); <u>Greene v. Lambert</u>, 288 F.3d 1081, 1090 (9th Cir. 2002). Further, a criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." <u>Montana v. Egelhoff</u>, 518 U.S. 37, 42 (1996) (quoting <u>Taylor v. Illinois</u>, 484 U.S. 400, 410 (1988)). "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." <u>Boyde v. Brown</u>, 404 F.3d 1159, 1172 (9th Cir. 2005).

### 4. Analysis

Assuming arguendo that petitioner is entitled to de novo review of this claim, he is still not entitled to relief. <u>See</u> <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir. 2008) ("So it is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised"). The trial court's exclusion of evidence of Mayra's prior accusation against Solis did not violate petitioner's right to present a defense.

1     First, as the California Court of Appeal concluded, the testimony at the Section 402

2  hearing did not did not conclusively establish that the accusation was false.  On the contrary,

3  Mayra never changed her story that Solis tried to kiss her, Solis apologized for his behavior after

4  Mayra's mother confronted him about it, and Solis' wife testified she considered divorcing Solis

5  over the incident.  This testimony implies that Mayra's accusation against Solis might have been

6  true.  The evidence was also susceptible to the interpretation that Mayra simply misinterpreted

7  Solis' actions.  Under these circumstances, the trial court reasonably determined that the

8  probative value of this evidence was outweighed by possible unfair prejudice, confusion of the

9  issues, or potential to mislead the jury.  Further, although the excluded evidence may have been

10  relevant and therefore admissible, the trial court's decision to exclude it pursuant to Cal. Evidence

11  Code § 352 was not "arbitrary or disproportionate" to the purposes that rule was designed to serve

12  and therefore did not violate petitioner's right to present a defense.

13     Assuming arguendo that the trial court's exclusion of this evidence was constitutional

14  error, the error could not have had a "substantial and injurious effect or influence in determining

15  the jury's verdict."  Brecht, 507 U.S. at 623.  Petitioner's defense was that the victims'

16  grandmother induced them to falsely accuse him of molestation as retribution for his actions in

17  pressuring the grandmother to repay a drug loan.  (RT at 465-66, 471-72; see also ECF No. 22-1

18  at 29) ("the essence of Valdivia's testimony was that the testimony of both complaining witnesses

19  was fabricated as retribution for Valdivia pressuring [his mother-in-law] to repay the loan.").

20  Thus, his defense maintained that the victims had a specific motive to testify falsely against him.

21  Testimony that Mayra accused Solis of attempting to kiss her at a party would only have been

22  relevant if petitioner's defense had been that Mayra had falsely accused him of sexual misconduct

23  without a specific or apparent motive.  In other words, evidence of the accusation against Solis

24  was not particularly relevant to petitioner's very specific defense.  Further, both of the victims,

25  not just Mayra, testified about sustained and explicit acts of abuse by petitioner.  In light of the

26  extensive testimony supporting the charges against petitioner and the implausibility of his

27  defense, the exclusion of evidence regarding Jesus Solis does not lessen confidence in the jury's

28  verdict.

1    In the traverse, petitioner argues that the trial court violated state law in excluding

2   evidence of Mayra's prior accusations against Solis.  (ECF No. 39 at 4-5.)  However, as set forth

3   above, a federal writ is not available for alleged error in the interpretation or application of state

4   law.  See, e.g., Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a

5   state court's interpretation of state law, including one announced on direct appeal of the

6   challenged conviction, binds a federal court sitting in habeas corpus.").

7    Accordingly, for the foregoing reasons, petitioner is not entitled to relief on this claim.

8    **B.  Exclusion of Evidence that Witness Invoked her Right to Remain Silent**

9    **1.  Due Process Claim**

10   In his next ground for relief, petitioner claims that the trial court violated his right to

11   present evidence in his defense when it ruled that a potential defense witness could invoke her

12   Fifth Amendment right to remain silent outside the presence of the jury.  Petitioner raised this

13   claim for the first time in a petition for writ of habeas corpus filed in the California Supreme

14   Court.  (Resp't's Lod. Doc. 7.)  That petition was summarily denied.  (Resp't'd Lod. Doc. 8.)  In

15   these circumstances, this court must independently review the record and "determine what

16   arguments or theories . . . could have supported, the state court's decision; and then it must ask

17   whether it is possible fairminded jurists could disagree that those arguments or theories are

18   inconsistent with the holding in a prior decision of [the United States Supreme] Court."  Richter,

19   562 U.S. at 102.

20   The facts surrounding this claim are the following.  Petitioner testified that he did not

21   molest either of the two victims and that their accusations against him were fabricated.  (RT at

22   450-51, 468-69.)  He also testified that he, Candelaria Uribe (the mother of the child victims) and

23   Uribe's mother Maria de Uribe, were involved in importing and selling cocaine and marijuana.

24   (Id. at 453-56.)  In connection with their drug activities, petitioner loaned $20,000 to de Maria de

25   Uribe.  (Id. at 454.)  When petitioner subsequently tried to get his money back, de Uribe

26   "threatened" him and told him that he was "pressuring her too much."  (Id.)  Petitioner testified

27   that Maria de Uribe induced the two victims to falsely accuse him as retribution for his actions in

28   pressuring her to repay the loan.  (Id. at 465-66.)  On cross-examination, he testified that

14

1    Candelaria Uribe was also "part of this conspiracy." (Id. at 493.)

2           Petitioner also testified that, in his opinion, Candelaria Uribe knew her children's

3    accusations against him were false.  (Id. at 494.)  Specifically, he testified: "and it's a lie what

4    they are saying I did.  In fact, the mother of my children, the mother of my children knows that it

5    is false." (Id.)  Petitioner also testified, "the mother of my children would see me two times a

6    week since I moved out of the house because she knew that it wasn't true." (Id.)  He testified that

7    Candelaria Uribe even brought the children to a Wal-Mart to meet with him after he had moved

8    out of the house. (Id. at 469.)  According to petitioner, the defense wanted to question Candelaria

9    Uribe about whether she knew her children were lying, as petitioner had testified.  (ECF No. 22-1

10   at 30.)

11          Because petitioner's testimony tended to incriminate Uribe in drug trafficking and other

12   crimes, the trial court appointed counsel to consult with her before she testified.  After conferring

13   with Uribe, her counsel informed the trial court that she was going to "plead the Fifth" because

14   she had not been given immunity from prosecution. (RT at 527.)   Petitioner's counsel asked that

15   Uribe be required to invoke her Fifth Amendment rights in front of the jury. (Id. at 528.)

16   Counsel for Uribe requested that Uribe be allowed to invoke her rights outside the presence of the

17   jury. (Id.)  The trial court elected to proceed outside the presence of the jury, whereupon the

18   following exchange occurred:

19              Q.  Ms. Uribe, what do you know about Omar Valdivia dealing
                drugs?
20
                A.  On advisement of my attorney, I don't want to answer that
21              question.

22              Q.  Is your intention not to answer any questions posed to you?

23              A.  That's correct.

24   (Id. at 529.)  Uribe was then excused from the courtroom.  (Id.)

25          Petitioner's counsel requested that Uribe repeat her invocation of the Fifth Amendment in

26   the presence of the jury. (Id. at 530.)  He argued, "I certainly believe it is relevant for the jury as

27   triers of fact to hear that one of the witnesses who have been accused of wrongdoing is choosing

28   to not testify.  That's relevant evidence and certainly something the jury should be able to

                                                    15

consider." (Id. at 531.)  After hearing argument on this issue, the trial judge asked counsel to

conduct research with regard to "whether or not the invocation has to happen in front of this jury"

and to send him the results of that research in an email message.  (Id. at 534.)  According to an

exhibit filed in support of petitioner's state habeas petition, it appears the trial court later sent an

email to all counsel referring them to Cal. Evidence Code § 913, which provides:

> (a) If in the instant proceeding or on a prior occasion a privilege is
> or was exercised not to testify with respect to any matter, or to
> refuse to disclose or to prevent another from disclosing any matter,
> neither the presiding officer nor counsel may comment thereon, no
> presumption shall arise because of the exercise of the privilege, and
> the trier of fact may not draw any inference therefrom as to the
> credibility of the witness or as to any matter at issue in the
> proceeding.
>
> (b) The court, at the request of a party who may be adversely
> affected because an unfavorable inference may be drawn by the
> jury because a privilege has been exercised, shall instruct the jury
> that no presumption arises because of the exercise of the privilege
> and that the jury may not draw any inference therefrom as to the
> credibility of the witness or as to any matter at issue in the
> proceeding.

(Resp't's Lod. Doc. 7, Ex. B.)  The prosecutor then sent an email to all parties, citing People v.

Mincey, 2 Cal.4th 408, 441 (1992) (holding that the trial court's denial of a defendant's request

that a witness invoke her Fifth Amendment privilege in the presence of the jury was proper and in

accordance with Evidence Code section 913).  (Id.)  Petitioner's counsel responded by

withdrawing his request to require Uribe to assert her Fifth Amendment rights in the presence of

the jury.  (Id.)  The next court day, the trial judge noted for the record that petitioner's counsel

had requested, but had then withdrawn, his request that Uribe invoke her Fifth Amendment right

against self-incrimination in front of the jury.  (RT at 555.)

Petitioner states that he wanted to question Uribe about a conversation she had with

potential defense witness Christina Hernandez, who "was willing and able to testify that

Candelaria Uribe had told Hernandez that the complaining witnesses had fabricated their

testimony." (ECF No. 22-1 at 30.)  The defense also wanted to question Uribe about whether she

"admitted the complaining witnesses had fabricated their testimony." (Id.)  Petitioner argues the

jury could have drawn an adverse inference that Uribe was guilty of drug trafficking had they

1  known she was asserting her rights under the Fifth Amendment.  (Id. at 32.)  Petitioner does not

2  explain in the petition how this inference would have impacted his defense, except to argue that

3  "Uribe could have corroborated Valdivia's testimony."  (Id. at 34.)  In the traverse, petitioner

4  explains that Uribe's invocation of the Fifth Amendment was important to his case because it

5  corroborated his testimony that Uribe was involved in drug trafficking.  (Id. at 10.)

6      In Griffin v. California, 380 U.S. 609 (1965), the United States Supreme Court held that

7  the Fifth Amendment prohibits a prosecutor from commenting to the jury on the defendant's

8  failure to testify at his criminal trial if the comment is intended to call attention to the defendant's

9  failure to testify, or is of such a character that the jury would understand it to be a comment on the

10  failure to testify.  See also Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987).  In Baxter v.

11  Palmigiano, 425 U.S. 308, 316 (9th Cir. 1976), the United States Supreme Court declined to

12  extend the Griffin rule to prison disciplinary proceedings, holding that that a prison disciplinary

13  board did not violate an inmate's Fifth Amendment rights when it drew an inference of guilt from

14  the inmate's refusal to speak in his defense.  The court explained, "[t]he short of it is that

15  permitting an adverse inference to be drawn from an inmate's silence at his disciplinary

16  proceedings is not, on its face, an invalid practice; and there is no basis in the record for

17  invalidating it as here applied to Palmigiano."  Id. at 320.  The court distinguished Griffin, noting:

> Griffin prohibits the judge and prosecutor from suggesting to the
> jury that it may treat the defendant's silence as substantive evidence
> of guilt.  Disciplinary proceedings in state prisons, however,
> involve the correctional process and important state interests other
> than conviction for crime.

21  Id. at 318–19.

22      In Mincey, the trial court denied defendant's request to compel a witness, who was also

23  charged with murder, to invoke the privilege against self-incrimination in front of the jury.  The

24  defendant claimed that the court's ruling in this regard violated his constitutional rights to due

25  process and to present a defense.  The California Supreme Court disagreed, finding that such a

26  request "was in direct violation of Evidence Code section 913."  2 Cal.4th at 441.  The court

27  noted that a witness may invoke his Fifth Amendment right to remain silent for reasons other than

28  guilt, and concluded that "[a] defendant's rights to due process and to present a defense do not

1    include a right to present to the jury a speculative, factually unfounded inference [based upon

2    invocation of the Fifth Amendment privilege against self-incrimination]."  Id.  Thus, in

3    California, a trial court does not commit error in denying a request that a witness who intends to

4    invoke the privilege against self-incrimination be compelled to do so in the presence of the jury.

5    Id.

6         Petitioner claims that California Evidence Code § 913 is "unconstitutional as applied in

7    the present case" because the statute permitted Uribe's Fifth Amendment rights "to take

8    precedence" over petitioner's right to offer evidence in his defense.  (ECF No. 22-1 at 28.)  Citing

9    Baxter, petitioner argues that it is permissible in federal court for a trier of fact to draw an adverse

10   inference from a witness' invocation of the Fifth Amendment right to remain silent when, as here,

11   that witness is not a defendant in a criminal proceeding.  Petitioner notes that Candelaria Uribe

12   was not then a defendant in any action and would have obtained the benefit of the Griffin rule

13   were she ever to be prosecuted for a crime in the future.  (Id. at 32, 33-34.)  Petitioner also argues

14   that the California Supreme Court's decision in Mincey "contradicts" the United States Supreme

15   Court's holding in Baxter.  (Id. at 34.)  Petitioner's claim, in essence, is that the application of

16   state law to deny his request to compel Uribe to invoke her Fifth Amendment right to remain

17   silent in front of the jury violated his federal right to present a defense, as interpreted in the

18   Baxter decision.

19        Respondent counters that because the United States Supreme Court has "never held that

20   the right to present a defense includes the right to require a non-party witness who invokes his or

21   her Fifth Amendment privilege to do so in front of a jury," the state court decision denying this

22   claim is not contrary to or an unreasonable application of federal law pursuant to 28 U.S.C. §

23   2254(d).  (ECF No. 33 at 24-25.)  Respondent also argues that the fact Uribe asserted her right to

24   remain silent was not relevant because it would not have conveyed any information about the case

25   and could lead to "improper jury speculation" about why Uribe was refusing to answer questions

26   (Id. at 25.)  He further argues that because petitioner's trial counsel withdrew his initial request to

27   compel Uribe to assert the Fifth Amendment before the jury, "the issue here is whether the Sixth

28   Amendment *compels* trial judges to require witnesses to invoke their Fifth Amendment privilege

1    in front of a jury." (Id.)  Respondent argues there is no authority for such a proposition.

2          Respondent distinguishes the holding in Baxter, noting that Baxter involved a prison

3    disciplinary hearing and not a criminal trial.  He also notes that the Ninth Circuit has held that a

4    non-party witness cannot be called solely to have him claim his privilege before the jury.  United

5    States v. Licavoli, 604 F.2d 613, 625 (9th Cir. 1979); United States v. Espinoza, 578 F.2d 224,

6    228 (9th Cir. 1978) ("a witness other than a codefendant cannot be called to testify merely to have

7    him exercise his Fifth Amendment privilege").  Cf. United States v. Seifert, 648 F.2d 557, 560

8    (9th Cir. 1980) (holding that the trial court should have required a non-party witness to invoke his

9    rights in front of the jury in response to the one question he refused to answer, when he had

10   answered every other question and his refusal "would be a form of impeachment.").

11         As respondent points out, petitioner's trial counsel ultimately withdrew his request to have

12   Uribe assert her Fifth Amendment rights in front of the jury.  Accordingly, the issue here is

13   whether the trial court was required to have Uribe invoke her Fifth Amendment privilege in front

14   of the jury even though there was no such request from either party.  Because there is no United

15   States Supreme Court case that squarely addresses this issue, the state court's decision was not

16   "contrary to" or an "unreasonable application" of "clearly established Federal law."  28 U.S.C. §

17   2254(d)(1).  See also Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) ("we conclude that when

18   a Supreme Court decision does not 'squarely address[ ] the issue in th[e] case . . . it cannot be

19   said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue

20   before us, and so we must defer to the state court's decision").

21         Assuming arguendo that this claim is governed by the general principles set forth in the

22   United States Supreme Court cases defining the right to present a defense, petitioner has failed to

23   overcome his "heavy burden" to show a due process violation under the circumstances of this

24   case.  The absence of evidence that Uribe invoked her Fifth Amendment rights did not deprive

25   petitioner of the opportunity to present his defense.  As explained, petitioner's defense was that

26   the victims fabricated their testimony at their grandmother's request in order to punish petitioner

27   for attempting to collect a drug debt.  Evidence that Uribe chose to remain silent after being asked

28   about "Omar Valdivia dealing drugs" would not have contributed to this defense in any

19

significant way.  Even if the jury had inferred from her assertion of the Fifth Amendment that Uribe knew something about petitioner's drug trafficking, this inference, standing alone, had little, if anything, to do with whether Uribe's children fabricated abuse allegations in order to support their grandmother's feud with petitioner.  The court also notes that petitioner's claim that Uribe could have corroborated his testimony that Uribe told him her children were fabricating their allegations is a misstatement of the record.  Petitioner did not claim Uribe told him her children had lied.  Rather, as set forth above, he testified that Uribe "knows that it was false." (RT at 494.)  There is no evidence before the court that Uribe taking the Fifth would have given rise to an inference that she admitted her children were lying in order to protect their grandmother.

For the reasons set forth above, the trial court's ruling that Uribe need not assert her Fifth Amendment rights in front of the jury did not deny petitioner a "meaningful opportunity to present a complete defense." Trombetta, 467 U.S. at 485.  Nor did it result in prejudice to his case.  Further, Cal. Evidence Code § 913, which the trial court relied on to exclude this evidence, was not "arbitrary or disproportionate" to the purposes the rule was designed to serve.  The decision of the California Supreme Court denying this claim is not contrary to or an unreasonable application of the United States Supreme Court cases cited above.  Accordingly, petitioner is not entitled to habeas relief.

### 2. Ineffective Assistance of Counsel

Petitioner also argues that he was denied his right to the effective assistance of counsel to the extent defense counsel withdrew his request that Uribe assert her Fifth Amendment rights in front of the jury.  (ECF No. 22-1 at 34.)  He argues that trial counsel should have based his request on the Baxter decision instead of deferring to state law.  (Id.)

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687.  Counsel is constitutionally deficient if his or her representation "fell below an objective standard of

1   reasonableness" such that it was outside "the range of competence demanded of attorneys in

2   criminal cases." Id. at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so

3   serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Richter, 562 at

4   104 (quoting Strickland, 466 U.S. at 687). A reviewing court is required to make every effort "to

5   eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

6   challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

7   Strickland, 466 U.S. at 669. See also Richter, 562 U.S. at 107 (same).

8          Reviewing courts must "indulge a strong presumption that counsel's conduct falls within

9   the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. There is in

10  addition a strong presumption that counsel "exercised acceptable professional judgment in all

11  significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

12  Strickland, 466 U.S. at 689). This presumption of reasonableness means that the court must "give

13  the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of

14  possible reasons [defense] counsel may have had for proceeding as they did." Cullen v.

15  Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks and alterations omitted).

16         Prejudice is found where "there is a reasonable probability that, but for counsel's

17  unprofessional errors, the result of the proceeding would have been different." Strickland, 466

18  U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the

19  outcome." Id. "The likelihood of a different result must be substantial, not just conceivable."

20  Richter, 131 S.Ct. at 792. A reviewing court "need not first determine whether counsel's

21  performance was deficient before examining the prejudice suffered by the defendant as a result of

22  the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of

23  lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

24         Petitioner has failed to demonstrate deficient performance or prejudice with respect to this

25  claim. Petitioner's counsel made several requests that Uribe be required to assert her Fifth

26  Amendment rights in front of the jury, but the trial judge clearly signaled that, based on his

27  analysis of state law, he was going to deny that request by virtue of his e-mail to the parties which

28

referred them to Cal. Evidence Code § 913.[2]  At that point, counsel withdrew his motion.  His

actions in this regard did not constitute deficient performance.  See Jones v. Smith, 231 F.3d

1227, 1239 n.8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) (an

attorney's failure to make a meritless objection or motion does not constitute ineffective

assistance of counsel)).  See also Matylinsky v. Budge, 577 F.3d 1083, 1094 (9th Cir. 2009)

(counsel's failure to object to testimony on hearsay grounds not ineffective where objection

would have been properly overruled); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the

failure to take a futile action can never be deficient performance").  In addition, this court has

concluded that the trial court's ruling in this regard did not violate petitioner's federal

constitutional right to present a defense.  Accordingly, any objection to that ruling on the grounds

that it violated the federal due process clause would have been equally meritless.  For these

reasons, petitioner is not entitled to relief on this claim.

## C.  Prosecutorial Misconduct

In his next two grounds for relief, petitioner claims that the prosecutor committed

prejudicial misconduct.  (ECF No. 22-1 at 35.)  In claim 3, he argues that the prosecutor

improperly coerced a jury verdict when he told the jury in closing argument that "it must reach a

verdict whether it takes 30 minutes or 30 days."  (Id. at 36.)  In claim 4, petitioner claims that the

prosecutor committed misconduct when he informed the jurors they could not vote for acquittal

unless they determined that the government witnesses had "lied."  (Id. at 38.)  He argues this

argument shifted the burden of proof to the defense and constituted improper vouching for the

veracity of the prosecution witnesses.  (Id.)  Finally, petitioner claims that his trial counsel

rendered ineffective assistance in failing to object to the prosecutor's closing remarks and that his

appellate counsel rendered ineffective assistance in failing to raise these issues on appeal.  After

setting forth the applicable legal principles, the court will address these claims below.

////

////

_____

[2] See section III B 1 of these findings and recommendations for further discussion.

22

1

**1. Applicable Legal Principles**

2      A criminal defendant's due process rights are violated when a prosecutor's misconduct

3 renders a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  Claims of

4 prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to

5 determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the

6 resulting conviction a denial of due process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir.

7 1995) (citation omitted).  See also Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v.

8 DeChristoforo, 416 U.S. 637, 643 (1974); Towery v. Schriro, 641 F.3d 300, 306 (9th Cir. 2010).

9 Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial

10 misconduct resulted in actual prejudice.  Darden, 477 U.S. at 181-83.  See also Towery, 641 F.3d

11 at 307 ("When a state court has found a constitutional error to be harmless beyond a reasonable

12 doubt, a federal court may not grant habeas relief unless the state court's determination is

13 objectively unreasonable").  Prosecutorial misconduct violates due process when it has a

14 substantial and injurious effect or influence in determining the jury's verdict.  See Ortiz-Sandoval

15 v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).  See also Brecht, 507 U.S. at 630-32.

16      "Improper argument does not, per se, violate a defendant's constitutional rights."  Jeffries

17 v. Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993).  In considering claims of prosecutorial misconduct

18 involving allegations of improper argument, the court must examine the likely effect of the

19 statements in the context in which they were made and determine whether the comments so

20 infected the trial with unfairness as to render the resulting conviction a denial of due process.

21 Darden, 477 U.S. at 181-83; Donnelly, 416 U.S. at 643; Turner v. Calderon, 281 F.3d 851, 868

22 (9th Cir. 2002).  In fashioning closing arguments, prosecutors are allowed "reasonably wide

23 latitude," United States v. Birges, 723 F.2d 666, 671-72 (9th Cir. 1984), and are free to argue

24 "reasonable inferences from the evidence."  United States v. Gray, 876 F.2d 1411, 1417 (9th Cir.

25 1989).  See also Ducket v. Godinez, 67 F.3d 734, 742 (9th Cir. 1995).  "[Prosecutors] may strike

26 'hard blows,' based upon the testimony and its inferences, although they may not, of course,

27 employ argument which could be fairly characterized as foul or unfair."  United States v.

28 Gorostiza, 468 F.2d 915, 916 (9th Cir. 1972).  "[I]t 'is not enough that the prosecutors' remarks

1    were undesirable or even universally condemned.'" Darden, 477 U.S. at 181 (citation omitted).

2    The issue is whether the "remarks, in the context of the entire trial, were sufficiently prejudicial to

3    violate [petitioner's] due process rights." Donnelly, 416 U.S. at 639; United States v. Robinson,

4    485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in context. . . .")

5                                  **2. Jury Coercion**

6        The prosecutor made the following remarks during his closing argument:

7            . . . you need to return with a verdict.  That's the whole point of jury
             deliberation.  If we didn't want you to talk amongst yourself after
8            we are done with our closing argument then the judge simply would
             say:  Juror Number 1, what's your verdict?  Juror number 2, and go
9            down the line.

10           It doesn't work like that.  After we are done talking, you get to go
             into a room and you get to stay in that room as long as you need to
11           arrive at a verdict.  You could take 30 minutes or 30 days.  There is
             no time limit.  You will not see the bailiff coming to your door
12           looking at his watch saying, "What's taking you so long?"

13   (RT at 581-82.)  Petitioner claims that this argument, and particularly the prosecutor's statements

14   that the jury "need[ed] to return with a verdict" and would have to "stay in that room as long as

15   you need to arrive at a verdict," whether it took "30 minutes or 30 days," improperly coerced the

16   jury to return a verdict.  (ECF No. 22-1 at 36.)  Petitioner cites Jenkins v. United States, 380 U.S.

17   445 (1965) in support of this claim.  In Jenkins, the jury sent a note to the trial judge during

18   deliberations advising that it had been unable to agree upon a verdict.  The judge recalled the jury

19   to the courtroom and, among other things, stated, "You have got to reach a decision in this case."

20   Id. at 446.  The Supreme Court held that this statement was impermissible because it coerced the

21   jurors "into surrendering views conscientiously held."  Id.

22           Assuming arguendo that the prosecutor committed misconduct by virtue of the challenged

23   remarks, petitioner has failed to demonstrate prejudice.  The jurors received the following jury

24   instructions:

25           If all of you cannot agree whether the People have proved beyond a
             reasonable doubt that the defendant is guilty of the greater crime,
26           inform me only that you cannot reach an agreement and do not
             complete or sign any verdict form for that count.
27
             If all of you agree that the People have not proved beyond a
28           reasonable doubt that the defendant is guilty of the greater crime

and you also agree that the People have proved beyond a reasonable doubt that he's guilty of the lesser crime, complete and sign the verdict form for not guilty of the greater crime and the verdict form for guilty of the lesser crime.

If all of you agree that the People have not proved beyond a reasonable doubt that the defendant is guilty of the greater or lesser crime, complete and sign the verdict form for not guilty of the greater crime and the verdict form for not guilty of the lesser crime.

If all of you agree the People have not proved beyond a reasonable doubt that the defendant is guilty of the greater crime but all you have cannot [sic] agree on a verdict of the lesser crime, complete and sign the verdict form for not guilty of the greater crime and inform me only that you cannot reach an agreement about the lesser crime.

(RT at 579-80.)  The jury was also instructed that:

You must follow the law as I explain it to you even if you disagree with it.  If you believe the attorneys' comments on the law conflict with my instructions, you must follow my instructions.

(Id. at 557.)  These instructions essentially informed the jury that a failure to agree on whether petitioner was guilty, or not guilty, of any of the charged offenses was one acceptable outcome of their deliberations.  In particular, the jury was advised that it was possible they would not agree on petitioner's guilt or innocence of each charged crime.  These instructions would have mitigated any possible confusion flowing from the prosecutor's remarks, to the extent those remarks suggested that the jurors had to come up with a verdict they could all agree on.  Further, instructing the jury that lawyers' comments and argument are not evidence can cure the harmful effect of isolated instances of improper argument.  Sassounian v. Roe, 230 F.3d 1097, 1107 (9th Cir. 2000).  This court assumes that the jury followed their instructions.  See Richardson v. Marsh, 481 U.S. 200, 206 (1987) (applying "the almost invariable assumption of the law that jurors follow their instructions"); Fields v. Brown, 503 F.3d 755, 782 (9th Cir. 2007) (same).  The court also notes that "arguments of counsel generally carry less weight with a jury than do instructions from the court."  Boyde v. California, 494 U.S. 370, 384–85 (1990).

It is true that "[a]ny criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body."  Lowenfield v. Phelps, 484 U.S. 231, 241 (1988).

////

As the Ninth Circuit has explained:

> Coercion can occur when, for example, a district court tells a jury that it must reach a decision, Jenkins v. United States, 380 U.S. 445, 446 [parallel citations omitted] (1965), a district court polls a jury before it reaches a verdict, Brasfield v. United States, 272 U.S. 448, 449-50 [parallel citations omitted] (1926), or a special verdict form reformulate[s] the elements of the crime, United States v. Reed, 147 F.3d 1178, 1181 (9th Cir.1998).

United States v. McCaleb, 552 F.3d 1053, 1057-58 (9th Cir. 2009).  None of these scenarios arose in this case.  The challenged remarks were made by the prosecutor and not the judge.  The judge's instructions did not state or imply that the jurors could not simply announce they had failed to reach an agreement.  The jury was specifically advised to disregard remarks by the attorneys that conflicted with the judge's instructions.  Under these circumstances, petitioner is unable to show that the prosecutor's remarks improperly coerced the jury to reach a verdict.

The decision of the California Supreme Court denying this claim of prosecutorial misconduct is not contrary to or an unreasonable application of United States Supreme Court authority, nor is it "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.  Accordingly, petitioner is not entitled to federal habeas relief.

### 3. Vouching for Prosecution Witnesses

In his next ground for relief, petitioner claims that the prosecutor committed misconduct and vouched for the credibility of his own witnesses when he essentially told the jurors in his closing argument that, in order to find petitioner not guilty, they had to find that defense witnesses, with the exception of the law enforcement officers and the child behavior expert, had "lied."  (ECF No. 22-1 at 38.)  Petitioner contends the prosecutor's comments constituted a "false alternative to acquittal" because they suggested to the jurors that "the *only* possible path to acquittal was if the jury affirmatively found that not only the two complaining witnesses lied, but that virtually every prosecution witness lied."  (Id.)  Petitioner argues these statements "impermissibly shifted the burden to the defense to prove *all* the government witnesses lied."  (Id. at 40.)  He contends that some of the witnesses could have been telling the truth and some could have been lying or mistaken, and that it violated his rights to be forced to prove that *all* of the

prosecution witnesses were lying in order to demonstrate his innocence.  (Id.)

The exact comments to which petitioner objects are the following:

- "someone got on that witness stand and lied to you.  It is that simple.  Who do you believe; a pathological liar that is willing to lie and say anything he has to do to get himself out of the situation, or do you believe Mayra and Maria?  That's how simple this case is.  It is really not complex."  (RT at 583.)

- "You have to say that was all a lie.  Mayra completely made that up."  (Id. at 589.)

- "What did Jeanette tell you?  She said I only went over [to] his house one time.  And that's all she needed to see.  She said I saw the way he spoke to her and way he looked at her, and I didn't go over there anymore.  You have to completely say Jeanette (Cruz), she is a liar."  (Id. at 591.)

- "Alejandro Calderon's 911 call.  If you believe the defense's version then that 911 call that you heard was all a lie.  He was not under the stress of Excitement at that time.  He completely made it all up.  That's what you have to believe.  You saw that man testify about what his nieces told him."  (Id. at 592.)

- "In order to find this defendant not guilty, you have to say that Perla Calderon, the victims' aunt, lied when she said the way that he looked at these girls troubled her, and I would ask Mayra what's going on and she would start crying.  You have to say that Perla came in here and lied."  (Id. at 610-11.)

- "You have to say that Mayra Cruz, she lied."  (Id.)

Petitioner cites United States v. Ruiz, 710 F.3d 1077 (9th Cir. 2013) in support of this claim.  In Ruiz, the prosecutor argued that the jurors could find the defendant not guilty "only" if they found that police officer prosecution witnesses "lied to you" and that two other witnesses were mistaken as to what had occurred.  The defendant argued that "the prosecutor's statements presented the jury with a false choice between his and the officers' accounts, since the officers could have testified honestly, but nonetheless mistakenly perceived the events on the night in question."  Id. at 1082.  The Ninth Circuit held that although the prosecutor's closing argument "came very close to altering the burden of proof," any error was harmless.  The court noted that

1    the challenged comments followed a "lengthy explanation of the elements that the government

2    was required to prove, and a reminder to the jury of the government's burden of proof." Id. at

3    1084.  In addition, the government's evidence of defendant's guilt in that case was "substantial."

4    Id.

5         "Vouching consists of placing the prestige of the government behind a witness through

6    personal assurances of the witness's veracity, or suggesting that information not presented to the

7    jury supports the witness's testimony." United States v. Necoechea, 986 F.2d 1273, 1276 (9th

8    Cir.1993).  The Ninth Circuit has found that vouching is "especially problematic in cases where

9    the credibility of the witness is crucial." Id. (internal citations and quotation marks omitted).

10   Prosecutors may, however, "argue reasonable inferences based on the evidence, including that

11   one of the two sides is lying." Id. (internal citations and quotation marks omitted).  Furthermore,

12   "prosecutors are permitted to respond to defense counsel's attempts to impeach the credibility of

13   government witnesses." United States v. Wilkes, 662 F.3d 524, 540 (9th Cir. 2011) (quoting

14   Necoechea, 986 F.2d at 1278–79.  "Thus, statements made by the prosecution do not constitute

15   improper vouching where the argument that witnesses had no motive to lie is a permissible

16   response to the defense counsel's earlier attacks on the witnesses's credibility." Id.

17        The Ninth Circuit has held, in the context of federal criminal trials, that a prosecutor may

18   commit improper vouching where he argues that in order to acquit a defendant the jurors must

19   find that government agents or other prosecution witnesses have "lied."  For instance, in United

20   States v. Weatherspoon, 410 F.3d 1142, 1146 (9th Cir. 2005), the Ninth Circuit found improper

21   vouching where the prosecutor told the jury, among other things, that government witnesses "had

22   no reason to come in here and not tell you the truth," and that in order to believe defendant's story

23   they would also have to believe that government witnesses had lied to the court, thereby

24   committing perjury.  In United States v. Combs, 379 F.3d 564 (9th Cir. 2004), the prosecutor

25   impermissibly vouched for the testimony of a government witness where he "plainly implied that

26   she knew [an agent] would be fired for committing perjury and that she believed no reasonable

27   agent in his shoes would take such a risk" Id. at 575.  In United States v. Sanchez, 176 F.3d

28   1214, 1219 (9th Cir. 1999), the Ninth Circuit held it was error "for a prosecutor to force a

1  defendant to call a [testifying government agent] a liar."

2  In this case, the prosecutor appears to have been arguing that it was impossible to believe

3  movant's version of the events unless the jury found the prosecution witnesses "lied."   In other

4  words, he was arguing that either petitioner or the victims must have been lying.  This premise is

5  not necessarily incorrect.  Under the circumstances of this case, the inference is unavoidable that

6  either movant or the two victims were lying.  The prosecutor's argument to the jurors that in order

7  to find petitioner not guilty they must believe that the victims "lied" appears to be a reasonable

8  inference based on the evidence in this case.  "In a case that essentially reduces to which of two

9  conflicting stories is true, it may be reasonable to infer, and hence to argue, that one of the two

10  sides is lying."  United States v. Ruiz, 710 F.3d 1077, 1082 (9th Cir. 2013) (quoting Molina, 934

11  F.2d at 1445).  See also Dubria v. Smith, 224 F.3d 995, 1004 (9th Cir. 2000) ("a prosecutor is free

12  to voice doubt about the veracity of a defendant's story").  With respect to the other prosecution

13  witnesses, the prosecutor was essentially arguing that the jury had to find these witnesses were

14  mistaken about what they had seen or suspected.  Again, these comments are a fair inference from

15  the record.  Either petitioner committed the charged acts, or the prosecution witnesses lied or

16  were mistaken.

17  The court also notes that the defense theory was that the victims made up their allegations

18  of abuse at the behest of their grandmother, who owed petitioner money.  Petitioner's counsel

19  argued in his closing argument that the victims were fabricating their testimony at the

20  grandmother's urging and that the other prosecution witnesses were simply mistaken as to their

21  suspicions about the nature of the relationship between petitioner and the victims.  (RT at 624,

22  628-29, 638-640.)  The prosecutor's comments were arguably proper as a response to petitioner's

23  attack on the credibility of the prosecution witnesses, including the victims.  The remarks were

24  also made in the context of the prosecutor's attempt to explain why the jury should reject

25  petitioner's version of the events

26  Assuming arguendo that the prosecutor committed misconduct in making these arguments

27  to the jury, petitioner has failed to demonstrate prejudice.  The evidence against petitioner,

28  particularly in the form of the victims' testimony, was overwhelming.  Both victims testified to

specific details of the assaults and did not recant their stories, either prior to trial or during cross-examination.  (See, e.g., RT at 203-224, 225-55, 258-63, 279-87, 291-302, 304-06.)  On the other hand, petitioner's defense that the minor victims were making up their stories in order to punish petitioner for attempting to collect a drug debt from their grandmother was implausible and was unsupported by any evidence other than petitioner's self-serving testimony.  In addition, after the victims told their story to the police, petitioner engaged in behavior that implied a consciousness of guilt, such as getting a fake ID and changing his name, telling the police when he was apprehended that he was not Omar Valdivia, and moving around constantly from house to house. (Id. at 594-95, 612.)  Finally, as in Ruiz, the prosecutor's comments were made in a lengthy closing argument that also: (1) explained at length to the jury what the prosecution had to prove in order for the jury to find petitioner guilty, (id. at 596-609); (2) explained how the evidence demonstrated petitioner's guilt of all charges (id.); and (3) summarized the testimony on both sides.  Under these circumstances, petitioner has failed to show that the prosecutor's comments had a substantial and injurious effect or influence on the verdict.  Brecht, 507 U.S. at 623. Accordingly, he is not entitled to relief on this claim.

### 4. Ineffective Assistance of Trial and Appellate Counsel

Petitioner claims his trial counsel rendered ineffective assistance in failing to object to the prosecutor's closing remarks, thereby precluding counsel "from seeking a curative instruction from the court."  (ECF No. 22-1 at 41.)  He also claims his appellate counsel rendered ineffective assistance in failing to raise the issue of prosecutorial misconduct on appeal.  (Id.)

Petitioner has failed to demonstrate prejudice resulting from trial counsel's failure to object to the prosecutor's closing remarks.  For the reasons set forth above, there is no reasonable probability that, but for his counsel's failure to object, the result of the proceedings would have been different.  Strickland, 466 U.S. at 694.  Certainly trial counsel's failure to object to these remarks does not "undermine confidence in the outcome" of this case.  Id.  Accordingly, petitioner is not entitled to relief on this claim.

Petitioner has also failed to demonstrate that his appellate counsel rendered ineffective assistance in failing to raise a claim of prosecutorial misconduct.  The Strickland standards apply

1   to appellate counsel as well as trial counsel.  Smith v. Murray, 477 U.S. 527, 535-36 (1986);

2   Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does

3   not have a constitutional right to compel appointed counsel to press nonfrivolous points requested

4   by the client, if counsel, as a matter of professional judgment, decides not to present those

5   points."  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide what

6   issues are to be pressed."  Id.  Otherwise, the ability of counsel to present the client's case in

7   accord with counsel's professional evaluation would be "seriously undermined."  Id.  See also

8   Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file

9   "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate

10  advocacy.")  There is, of course, no obligation to raise meritless arguments on a client's behalf.

11  See Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as

12  prejudice).  Thus, appellate counsel is not deficient for failing to raise a weak issue.  See Miller,

13  882 F.2d at 1434.  In order to establish prejudice in this context, petitioner must demonstrate that,

14  but for appellate counsel's errors, he probably would have prevailed on appeal.  Id. at 1434 n.9.

15      Appellate counsel's decision to press claims with arguably more merit than the

16  prosecutorial misconduct claim now suggested by petitioner was well "within the range of

17  competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759,

18  771 (1970).  The United States Supreme Court has stated that "appellate counsel who files a

19  merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from

20  among them in order to maximize the likelihood of success on appeal."  Smith v. Robbins, 528

21  U.S. 259, 288 (2000).  See also Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1985) ("Generally,

22  only when ignored issues are clearly stronger than those presented, will the presumption of

23  effective assistance of counsel be overcome").  Appellate counsel's decision to do that here did

24  not constitute ineffective assistance.  Accordingly, petitioner is not entitled to habeas relief on this

25  claim.

26  **IV. Conclusion**

27      For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

28  application for a writ of habeas corpus be denied.

31

1     These findings and recommendations are submitted to the United States District Judge

2 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3 after being served with these findings and recommendations, any party may file written

4 objections with the court and serve a copy on all parties.  Such a document should be captioned

5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6 shall be served and filed within fourteen days after service of the objections.  Failure to file

7 objections within the specified time may waive the right to appeal the District Court's order.

8 Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

9 1991).  In his objections petitioner may address whether a certificate of appealability should issue

10 in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

11 Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

12 enters a final order adverse to the applicant).

13 Dated:  November 30, 2016

14

15

16

17 Valdivia2097.hc:mou8
DB1:prisoner-habeas

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

32